United States District Court
Southern District of Texas
**ENTERED**
January 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUCERO SALERMO, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:19-cv-02791 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| HUGHES WATTERS & | § | |
| ASKANASE LLP, *et al*, | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER
GRANTING MOTION TO DISMISS IN PART**

Plaintiff Lucero Salermo brings claims under the Fair Debt Collection Practices Act against Defendant Hughes, Watters, & Askanase, LLP. The motion by HWA to dismiss for lack of standing and for failure to state a claim is granted in part and denied in part. Dkt 24.

Salermo lacks standing to pursue her claim under 15 USC § 1692g, regarding failure to include required information in the debt-collection letter sent by HWA that is the subject of this action. Salermo has standing to pursue her claim under 15 USC § 1692e, regarding use of false, deceptive, or misleading representation or means in connection with that letter.

The former claim is dismissed. The latter claim will proceed, as HWA doesn't otherwise attack it as failing to state a claim.

1. Background

Salermo incurred a loan with Cy-Fair Federal Credit Union to repay credit-card debt. Dkt 18 at ¶ 9. She describes HWA as a Texas law firm that "regularly collects or attempts to collect, directly or indirectly, debts owed or alleged to be owed or due to another." Id at ¶ 6. Cy-Fair "obtained the services of HWA" for purposes of debt collection. Id at ¶ 10. Named as additional

defendants are an unspecified number of *John Does*, being "lawyers and employees of HWA, who regularly engage in the collection of debts allegedly due another." Id at ¶ 7.

HWA sent the subject debt-collection letter to Salermo in April 2019. Id at ¶ 11; see Dkt 18-1. Salermo attached it to her complaint, making it appropriate to consider on motion to dismiss. See *Collins v Morgan Stanley Dean Witter,* 224 F3d 496, 498–99 (5th Cir 2000). The John Doe Defendants are alleged to have "created, approved, directed, and/or supervised the preparation and sending of letters" such as the one in dispute. Dkt 18 at ¶ 19.

The complaint doesn't itself indicate the amount of the debt. But the letter asserts a payoff amount of approximately $9,000. Dkt 18-1 at 3. The complaint also doesn't allege that Salermo ever intended to dispute that debt. To the contrary, counsel to Salermo acknowledged at hearing that the debt was in fact valid and past due. Even so, Salermo alleges in her complaint that the letter caused her various forms of anxiety for two reasons that purport to coincide with requirements imposed by the FDCPA upon debt-collection letters.

*First,* the letter is on HWA firm letterhead and signed on behalf of the law firm itself. Dkt 18 at ¶ 12; Dkt 18-1. Salermo alleges "upon information and belief" that the letter wasn't drafted by a lawyer, but instead "was drafted by non-lawyer '/kchavez.'" Dkt 18 at ¶ 14. She further alleges "[u]pon information and belief" that "no attorney had been involved in the debt collection process" at the time the letter was sent to Salermo. Id at ¶ 15. HWA allegedly "failed to notify" her of this fact, and indeed, "deliberately omitted" that information. Id at ¶¶ 16–17. She alleges that she was "misled and believed an attorney had reviewed her" case. Id at ¶ 18. This caused her to be "upset and frightened" because she "thought something imminent would happen, perhaps a lawsuit would be filed against her." Id at ¶ 13.

She asserts that these facts violate FDCPA protections codified at 15 USC § 1692e, e(3), and e(10). These provide:

> A debt collector may not use any false, deceptive, or misleading representation or

> means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney. . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

See Dkt 18 at ¶¶ 36–45.

> *Second,* the letter contained the following language:
>> NOTWITHSTANDING ANYTHING ELSE IN THIS LETTER YOU HAVE THE FOLLOWING RIGHTS: UNLESS WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, AND NOTIFY THE UNDERSIGNED OF SUCH DISPUTE, THE DEBT WILL BE PRESUMED TO BE VALID. IF WITHIN SUCH TIME PERIOD YOU DISPUTE THE DEBT, OR ANY PORTION THEREOF, UPON REQUEST THE UNDERSIGNED WILL FURNISH YOU WITH VERIFICATION OF THE DEBT.

Dkt 18-1 at 2 (emphasis omitted); see also Dkt 18 at ¶ 21.

She alleges that this language was "deliberately" drafted to omit the words "'by the debt collector' or words to that effect in order to confuse consumers regarding who may assume the debt to be valid." Dkt 18 at ¶ 23. This "deceived" her, Salermo says, and she "believed that if she failed to dispute the debt, then her debt would be 'assumed to be valid' by everyone, *e.g.*—creditor, the courts, the lawyers, etc." Id at ¶ 24. She was also "confused, frightened, and misled" by the letter, understanding "that

3

provision to mean that if she fails to dispute the debt to the Defendants, then she has waived her right to dispute it later." Id at ¶¶ 53–54.

She asserts that these facts again constitute violations of § 1692e and e(10). She also asserts a violation of § 1692g(a)(3), which provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . .
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

See Dkt 18 at ¶¶ 46–55.

Salermo seeks redress under the FDCPA in her individual capacity. She also brings this lawsuit on behalf of all similarly situated persons within Texas, seeking certification of a class of those who may have received a letter in this form from HWA. Id at ¶¶ 28–35.

HWA moved to dismiss, asserting both lack of standing and failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Dkt 24.

## 2. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject-matter jurisdiction. This includes a challenge, as here, to the standing of the plaintiff to assert a claim.

Federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). The Fifth Circuit holds that dismissal is appropriate "when the court lacks the statutory or constitutional power to

adjudicate the claim." *In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association, Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998).

The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that subject-matter jurisdiction is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008), citing *Howery*, 243 F3d at 919; *Paterson v Weinberger*, 644 F2d 521, 523 (5th Cir 1981). Indeed, a presumption against subject-matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

The motion also asserts a challenge under Rule 12(b)(6) for failure to state a claim as to the claim under 15 USC § 1692g(a)(3). This aspect of the motion is discussed in limited fashion below because that particular claim fails as to standing.

### 3. Analysis

Action here arises under the Fair Debt Collection Practices Act, presenting questions of standing under both the Act and the United States Constitution.

Congress has authority through the legislative power to create statutory rights or entitlements "the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v Seldin*, 422 US 490, 514 (1975). In such instances, establishing a violation of the statutory scheme and an entitlement to enforce it are necessary preconditions to stating a claim for which relief can be granted—often referred to as *statutory standing*. See *Lexmark International, Inc v Static Control Components*, 572 US 118, 128 n 4 (2014). But that alone is insufficient. A plaintiff who alleges a statutory violation must also meet the requirements of Article III of the Constitution—often referred to as *constitutional standing*. Id at 125, citing *Lujan v Defenders of Wildlife*, 504 US 555, 560 (1992).

The precise demarcation between statutory and constitutional standing is at times difficult to discern. At the pleading stage, the determination of standing depends upon scrutiny of the statutory prohibitions and protections enacted by

Congress, the nature of the alleged conduct, and the character of the alleged injury. For example, see *Spokeo Inc v Robins*, 136 S Ct 1540, 1547–49 (2016), as considered below.

> a. The Fair Debt Collection Practices Act, generally

Congress enacted the FDCPA "to eliminate abusive, deceptive, and unfair debt collection practices, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 USC § 1692(e); see also *Sheriff v Gillie*, 136 S Ct 1594, 1598 (2016). The Act accomplishes that purpose by regulating the kind and frequency of contact a *debt collector* may have with a *consumer*, as those terms are defined under the FDCPA. See 15 USC § 1692a(3), a(6) (definitions); see also *Gonzalez v Kay*, 577 F3d 600, 603 (5th Cir 2009). Various provisions either prohibit debt collectors from engaging in certain conduct or require them to undertake specific conduct. For example, see 15 USC §§ 1692c (communication in connection with debt collection), 1692d (harassment or abuse), 1692e (false or misleading representations), 1692f (unfair practices), and 1692g (validation of debts).

Congress designed these protections against deceptive debt-collection practices to provide a shield to all consumers, "including the inexperienced, the untrained and the credulous." *Taylor v Perrin, Landry deLaunay & Durand*, 103 F3d 1232, 1236 (5th Cir 1997). This means that federal courts must "evaluate any potential deception" according to an "unsophisticated or least sophisticated consumer standard." *Goswami v American Collections Enterprise, Inc*, 377 F3d 488, 495 (5th Cir 2004), citing *Taylor*, 103 F3d at 1236. But they mustn't set that standard too low. That is, the debtor isn't considered as being on "the very last rung on the sophistication ladder." *Taylor*, 103 F3d at 1236, quoting *Gammon v GC Services LP*, 27 F3d 1254, 1257 (7th Cir 1994). Instead, in determining whether a particular practice is deceptive under the FDCPA, a court should simply assume the debtor "is neither shrewd nor experienced in dealing with creditors."

*Mahmoud v De Moss Owners Association, Inc*, 865 F3d 322, 330–31 (5th Cir 2017), quoting *Goswami*, 377 F3d at 495.

Congress provided for enforcement through administrative action by the Federal Trade Commission and through private lawsuits. 15 USC §§ 1692l, 1692k; see also *Jerman v Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 US 573, 576 (2010). This means that a consumer may sue to enforce the provisions and protections of the FDCPA, recovering actual damages, statutory damages, and attorney fees and costs where successful. *Busby v Vacation Resorts International*, 2019 WL 669641, *3 (SD Tex) (citation omitted). It is this private right to enforce the FDCPA that Salermo asserts here.

### b. Article III standing, generally

The United States Constitution vests power in the federal courts to adjudicate only "Cases" and "Controversies." Art III, § 2. The Supreme Court recently reiterated, "We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v Adams*, 141 S Ct 493, 498 (2020), citing *Flast v Cohen*, 392 US 83, 96–97 (1968), and *Coleman v Miller*, 307 US 433, 460 (1939) (Frankfurter, J, dissenting).

A corollary of this limitation is that a plaintiff must have standing under Article III to assert a claim in federal court. The Supreme Court observes, "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues." *Warth*, 422 US at 498. This doctrine is itself designed to "ensure that federal courts do not exceed their authority." *Spokeo*, 136 S Ct at 1547, citing *Raines v Byrd*, 521 US 811, 818 (1997).

The criteria sufficient to confer Article III standing are well known. A plaintiff must show that:

- o *First,* she's suffered an injury in fact;
- o *Second,* the injury is fairly traceable to the challenged conduct; and
- o *Third,* the injury is likely to be redressed by a favorable judicial decision.

*Lujan*, 504 US at 560–61. The party asserting a claim in federal court bears the burden to establish Article III standing. *Spokeo*, 136 S Ct at 1547, citing *FW/PBS, Inc v Dallas*, 493 US 215, 231 (1990). This means that the plaintiff must clearly allege facts at the pleading stage that demonstrate each criterion. *Spokeo*, 136 S Ct at 1547, quoting *Warth*, 422 US at 518.

At issue between the parties here is the *injury-in-fact* criterion. The Supreme Court has often summarized that this requires a plaintiff to show "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S Ct at 1548, quoting *Lujan*, 504 US at 560; see also *Carney*, 141 S Ct at 498–99. These are each a distinct requirement.

For an injury to be *concrete* means that it is practical and developed, rather than "intellectual" and "abstract." *Federal Election Commission v Akins*, 524 US 11, 20 (1998), quoting *Coleman*, 307 US at 460 (Frankfurter, J, dissenting); see also *Diamond v Charles*, 476 US 54, 67 (1986). Only injuries of that kind support a "concrete, living contest between adversaries" and warrant "the arbitrament of law." *Coleman*, 307 US at 460 (Frankfurter, J, dissenting). Said another way, a "concrete injury is, like it sounds, 'real and not abstract.'" *Buchholz v Meyer Njus Tanick, PA*, 946 F3d 855, 861 (6th Cir 2020), quoting *Spokeo*, 136 S Ct at 1548. See also Erwin Chemerinsky, *Federal Jurisdiction* 68–69 (Wolters Kluwer 8th ed 2020).

For an injury to be *particularized* means that it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S Ct at 1548, quoting *Lujan*, 504 US at 560 n 1. Among other characteristics, the injury must be one that personally harms the plaintiff and in which she has "a direct stake in the outcome." *McMahon v Fenves*, 946 F3d 266, 270 (5th Cir 2020), citing *Lujan*, 504 US at 560 n 1 and quoting *Sierra Club v Morton*, 405 US 727, 740 (1972). See also Chemerinsky, *Federal Jurisdiction* at 69–73.

And for an injury to be *actual or imminent* means that allegations of "possible future injury" are insufficient. *Clapper v Amnesty International, USA*, 568 US 398, 409 (2013) (emphasis omitted), quoting *Whitmore v Arkansas*, 495 US 149, 158 (1990). A plaintiff has standing only where she's already suffered a legally

8

recognized injury or where there is an impending danger or substantial risk that she'll suffer such an injury. See *Summers v Earth Island Institute*, 555 US 488, 496 (2009). See also Chemerinsky, *Federal Jurisdiction* at 60–68.

### c. Standing and the FDCPA, considered

The Supreme Court hasn't yet addressed an issue of standing under the FDCPA. But it recently dealt with analogous concepts under the Fair Credit Reporting Act in *Spokeo Inc v Robins*, 136 S Ct 1540 (2016).

The Court there observed that violation of a procedural right granted by statute can in some circumstances be a sufficiently concrete harm (even if intangible) to establish the requisite injury in fact. An "*additional*" harm beyond the one Congress has identified" isn't necessary. Id at 1549 (emphasis in original), citing *Akins*, 524 US at 20–25. But it specifically noted that the power of Congress "in identifying and elevating intangible harms" doesn't include the authority to waive constitutional standing. *Spokeo*, 136 S Ct at 1549.

In other words, it isn't the case that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Ibid. Instead, Article III standing still "requires a concrete injury even in the context of a statutory violation." Ibid. More specifically, the deprivation of a statutory right must be accompanied by "some concrete interest" that was also affected by the same deprivation. Ibid, quoting *Summers*, 555 US at 496.

And so *Spokeo* recognizes that a concrete, intangible injury based on a statutory violation must at a minimum constitute a "risk of real harm" to the plaintiff. 136 S Ct at 1549. As to the asserted FCRA violation in that case, the Supreme Court held that a bare allegation of violation based on inaccurate reporting of consumer information was insufficient to meet the injury-in-fact criterion because "not all inaccuracies cause harm or present any material risk of harm." Id at 1550.

The foregoing is in fact the Fifth Circuit's own distillation in *Lee v Verizon Communications Inc* on remand from the Supreme Court for further consideration in light of *Spokeo*. See 837 F3d

523, 529 (5th Cir 2016). The Fifth Circuit there considered a "bare allegation of incursion on the purported statutory right to 'proper plan management'" under the Employee Retirement Income Security Act. Ibid. It held that this "was not alone sufficient to create standing where there was no allegation of a real risk that [plaintiff's] defined-benefit-plan payments would be affected." Id at 530. This was so, said the Fifth Circuit, because the plaintiff's "'concrete interest' in the plan—his right to payment—was not alleged to be at risk" from the pertinent statutory deprivation. Ibid. There instead needed to be an "allegation of risk to defined-benefit-plan participants' actual benefits" in addition to the alleged violation. Ibid.

The Supreme Court also considered this requirement of an actual (or at least *risk* of actual) injury in its very recent decision of *Carney v Adams*, 141 S Ct 493 (2020). A potential judge who wanted to seek appointment as an Independent challenged a requirement in the Delaware Constitution of political balance between parties. The evidence was thin that he'd ever sought or would ever seek such appointment. The Supreme Court held that he "must at least show that he is likely to apply to become a judge in the reasonably foreseeable future." Id at 499–500. And he could do so only if he was "able and ready" to apply. Ibid (citations omitted). The Supreme Court noted that the plaintiffs in *Lujan* "had not described any concrete plans to visit" the habitats of concern, and that "some day intentions" weren't enough to establish actual-or-imminent injury. Id at 502, quoting *Lujan*, 504 US at 563–64. On the other hand, indications of plans to bid on every available construction contract had previously been found sufficient. *Carney*, 141 S Ct at 502, citing *Adarand Constructors, Inc v Pena*, 515 US 200, 212 (1995). And the same was true as to a demonstrated intent to transfer to a university if its affirmative-action plan ceased to be applied to its transfer-admissions process. *Carney*, 141 S Ct at 502–03, citing *Gratz v Bollinger*, 539 US 244, 262 (2003).

The Fifth Circuit appears to have touched on this issue of standing and the FDCPA only twice. It held in *Sayles v Advanced Recovery Systems, Inc* that the plaintiff had standing to enforce 15 USC § 1692e(8). 865 F3d 246, 249–50 (5th Cir 2017). That

provision prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." The plaintiff there told the defendant debt collector that he intended to dispute the debt. But contrary to § 1692e(8), the debt collector then failed to indicate his debt as *disputed* in the notice letters it sent to creditors. This was a concrete injury, the Fifth Circuit said, because these actions exposed the plaintiff to "a real risk of financial harm created by an inaccurate credit rating." *Sayles*, 865 F3d at 250, citing *Spokeo*, 136 S Ct at 1549; see also *Jones v Portfolio Recovery Associates, LLC*, 2017 WL 7052288, *2 (WD Tex) (standing found under § 1692e(8) where plaintiff suffered inaccurate credit rating).

The Fifth Circuit more recently addressed standing under the FDCPA in *Flecha v Medicredit, Inc*, 946 F3d 762 (5th Cir 2020). That case (like this one) arose in the class-action context. The plaintiff there alleged that a collection agency sent her a collection letter threatening legal action without actual intent to follow through on that threat. The plaintiff argued this letter violated the general prohibition on false, deceptive, or misleading statements found in 15 USC § 1692e. See *Flecha v Medicredit, Inc*, 2018 WL 3603098, *1–2 (WD Tex). The Fifth Circuit observed that "undoubtedly many unnamed class members" who received that form letter would "lack the requisite injury to establish Article III standing" because (depending upon individual circumstance) they "lack a cognizable injury under Article III." *Flecha*, 946 F3d at 768. But the standing issue there didn't require specific resolution. On the one hand, the parties didn't dispute the standing of the class representative. On the other, the court found that the proposed class itself failed certification under Rule 23 principles that are "logically antecedent" to consideration of the standing of unnamed class members. See id at 768–69, citing *Amchem Products, Inc v Windsor*, 521 US 591, 612 (1997), and *Ortiz v Fibreboard Corp*, 527 US 815, 831 (1999).

Still, *Flecha* obviously requires individualized consideration of standing for the particular FDCPA provision at issue and allegedly violated. Not everyone receiving the same debt-

11

collection letter will react the same, and so standing can't necessarily be determined from the face of the letter alone. This means that some violations under the FDCPA will confer standing, and some won't.

To reiterate, the conclusion on standing depends upon the particular statutory prohibitions and protections enacted by Congress, the nature of the alleged conduct by the defendant, and the character of the alleged injury by the plaintiff. At the end of the day, a violation of the FDCPA confers standing if (but only if) the conduct by the defendant causes real harm—or a risk of real harm—to the plaintiff. For example, see *Busby*, 2019 WL 669641 at \*5 (collecting citations), and quoting *Sayles*, 865 F3d at 250. That harm (or its potentiality) needn't necessarily be of financial injury, because *concrete* isn't "necessarily synonymous with tangible." *Spokeo*, 136 S Ct at 1549. But the harm must still be actual—that is, it must be sufficiently practical and developed such that it actually exists. Id at 1548.

### d. Standing and the FDCPA, applied

The question is whether each alleged violation by HWA of particular provisions of the FDCPA constitutes a concrete injury when considered as to Salermo's personal circumstances.

#### i. Claim under 15 USC § 1692g

Salermo asserts that the collection letter failed to clarify that, absent objection, the debt would be assumed valid only by the debt collector. This caused her to be "confused, frightened, and misled" that it would be assumed valid by everyone. Dkt 18 at ¶ 53. This violated the FDCPA, she says, because the Act requires debt-collection letters to include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector.*" 15 USC § 1692g(a)(3) (emphasis added).

It can be assumed for purposes of considering standing that the letter violated this provision, especially when considered under the unsophisticated-consumer standard. The letter conceivably implies that, absent objection, the debt would be assumed valid by more persons or entities than just the debt collector. And the injury alleged is also sufficiently *particularized*.

Salermo pleads injuries here that are personal to her. See *McMahon*, 946 F3d at 271–72.

But Salermo fails to allege a *concrete* injury. The complaint nowhere pleads that the referenced debt isn't valid, and her counsel at hearing flatly conceded that it is. To be sure, the Fifth Circuit explicitly held in *McCartney v First City Bank* that admission that a debt is valid doesn't erect an absolute *substantive* bar to liability under any and all provisions of the FDCPA. 970 F2d 45, 47 (5th Cir 1992). Still, such admission here negates standing by eliminating the concreteness of the alleged injury as to this particular statutory right.

The protections under § 1692g(a) entitle a consumer to notice of certain information with respect to the validation of debts. That subsection requires that debt collectors send a notice following initial contact with the debtor and prescribes the notice's content. Together with the subsection g(a)(3) at issue here, these provisions generally afford the consumer an opportunity to dispute an asserted debt by ensuring that she knows that she has the right to dispute her debt, providing her the information she needs to do so, and explaining how she can do so. For example, see *Bazile v Finance System of Green Bay, Inc*, 983 F3d 274, 279–81 (7th Cir 2020). Where the debt collector provides inaccurate or incomplete information, a plaintiff will ordinarily have standing because the unlawful letter will cause a substantial risk that she won't know how to assert her right to dispute the debt, or that she will do so improperly. For example, see id at 280–81; *Lavellee v Med-1 Solutions, LLC*, 932 F3d 1049, 1052–54 (7th Cir 2019); *Macy v GC Services LP*, 897 F3d 747, 751, 765–58 (6th Cir 2018); *Hargis v Equinox Collection Services, Inc*, 2019 WL 2341662, *4–6 (ND Okla).

By contrast, a putative violation of those statutory rights is inconsequential if the debt at issue is valid. For example, see *Casillas v Madison Avenue Associates, Inc*, 926 F3d 329, 332–34 (7th Cir 2019); *Smith v GC Services LP*, 2019 WL 7944350, *2 (SD Ind). An injury is simply abstract—not concrete—under § 1692g(a)(3) where the plaintiff hasn't alleged that she "ever intended" or "harbored any potential basis" to dispute the asserted debt. *Abercrombie v Rogers, Carter, & Payne, LLC*, 2016 WL

8201965, *4 (WD La). This is so because neither § 1692g in general, nor subsection g(a)(3) in particular, accord a consumer the right to have others assume that a debt *isn't* valid when in fact *it is*. The alleged "fear" that Salermo pleads in her complaint as to this statutory provision thus doesn't accord with a recognized protection under the FDCPA to dispute a debt because she didn't, in fact, intend to dispute the asserted debt. Her injury in that respect is neither practical nor developed. It is instead purely theoretical and academic. Indeed, her alleged fear is actually contrary to other aspects of § 1692g, where subsection g(c) provides, "The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."

It is noted that Salermo also alleges this same aspect of the debt-collection letter as a violation of § 1692e and e(10). Those provisions are addressed at length below as to the representation of attorney involvement, where standing is found. But standing fails as to them with respect to the assumed-valid contention. It is less clear that the letter in this respect even falls within the protections of § 1692e. But assuming so, the alleged harm is still nonexistent, for the same reason—the validity of the debt isn't actually in dispute.

The Supreme Court in *Spokeo* specifically noted that a plaintiff could not, under the Fair Credit Reporting Act, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." 136 S Ct at 1549, citing *Summers*, 555 US at 496. Why? Because "not all inaccuracies cause harm or present any material risk of harm." *Spokeo*, 136 S Ct at 1550. That is the situation here.

The injury alleged by Salermo is insufficiently concrete to confer Article III standing. This deprives the Court of subject-matter jurisdiction, leaving it with no power to rule on the dispute. For example, see *Cox, Cox, Filo, Camel & Wilson LLC v Sasol North America, Inc*, 544 F Appx 455, 456–57 (5th Cir 2013). The claim must be dismissed without prejudice. *Campos v United States*, 888 F3d 724, 738 (5th Cir 2018).

### ii. Claim under 15 USC § 1692e

Salermo also asserts that the collection letter falsely represented that attorneys had prepared and sent it. This caused her to be "upset and frightened." Dkt 18 at ¶ 13. And this violated the FDCPA, she says, because it prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including specific prohibition on "false representation or implication that any individual is an attorney or that any communication is from an attorney" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 USC § 1692e, e(3), e(10).

It can again be assumed for purposes of considering standing that the letter violated these provisions. An unsophisticated consumer reading the letter would see the firm letterhead and signature on behalf of the law firm and could reasonably conclude that an attorney prepared and sent it. And if that were false, the injury alleged is again sufficiently *particularized*, with the injuries pleaded here being personal to Salermo. See *McMahon*, 946 F3d at 271–72.

But contrary to claim under § 1692g, Salermo sufficiently alleges a *concrete* injury under § 1692e. The latter section—and especially § 1692e(3)—entitles consumers to be entirely free of communications that purport to be prepared or sent by attorneys when in fact they aren't. The Seventh Circuit has observed that an "unsophisticated consumer, getting a letter from an 'attorney' knows the price of poker has just gone up." *Avila v Rubin*, 84 F3d 222, 229 (7th Cir 1996). The Fifth Circuit in *Gonzalez v Kay* has likewise noted "the intimidation inherent in this type of communication." 577 F3d at 604, citing *Avila*, 84 F3d at 229.

Simply put, receiving such a communication by its nature increases fear and apprehension that a lawsuit is imminent (or that litigation will be involved) when it perhaps might not be. And that same fear will exist even in situations where the consumer knows that the debt is valid. The injury—or its actual risk—is so clear that the Fifth Circuit long ago flatly held that "a debt collector, who uses a mass-produced collection letter using the letterhead and facsimile signature of a lawyer who is not actually

participating in the collection process, violates 1692e(3)." *Taylor*, 103 F3d at 1238. No carveout was stated or implied with respect to valid, undisputed debt.

Many district courts that have addressed this issue of standing under § 1692e have come to the same conclusion. For example, see *Gibbons v Weltman, Weinberg & Reis Co*, 2020 WL 5039316, *5–7 (ED Penn) (as to § 1692e(3) and e(10)); *Poole v Med-1 Solutions, LLC*, 2020 WL 1317450, *3 (SD Ind) (as to § 1692e, e(5), e(10), and e(14)); *Thompke v Fabrizio & Brook, PC*, 261 F Supp 3d 798, 805–06 (ED Mich 2017) (as to § 1692e(3)); *Busby*, 2019 WL 669641 at *4–6 (as to § 1692e(10)); but see *Buchholz v Meyer Njus Tanick, PA*, 946 F3d 855, 862–65 (6th Cir 2020) (expressing skepticism in *dicta* that anxiety alone is concrete injury as to § 1692e(3)).

Salermo experienced the harm attendant to her right provided by Congress to be free from "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 USC § 1692e. Her alleged injury is thus sufficiently concrete to confer Article III standing. This claim will proceed.

    4. Pleading sufficiency as to Rule 12(b)(6)

HWA moves in the alternative under Rule 12(b)(6) for failure to state a claim. It does so only as against the claim regarding the assumed validity of the debt under 15 USC § 1692g. That claim fails for lack of standing under Rule 12(b)(1), per the above. It needn't be addressed further here.

HWA doesn't argue failure to state a claim as to attorney involvement in the letter under 15 USC § 1692e. This is curious because the complaint appears quite unsupported in this regard, reciting solely "upon information and belief" that a nonlawyer drafted the letter without attorney involvement. Dkt 18 at ¶¶ 14–15, 41–42. But no related information or facts are pleaded to establish that belief. And indeed, it is contrary to the attached debt-collection letter that asserts attorney fees of $250 had already been incurred. Dkt 18-1 at 3.

Pleading *upon information and belief* is permissible in a general sense. See *Johnson v Johnson*, 385 F3d 503, 531 n 19 (5th Cir 2004); see also Charles Alan Wright and Arthur R. Miller, *Federal Practice*

*and Procedure* § 1224 (West 3d ed October 2020 update). Even so, such pleading form is recognized as little more than "a lawyerly way of saying" that the plaintiff "does not know that something is a fact but just suspects it or has heard it." *Donald J Trump for President Inc v Pennsylvania*, 830 F Appx 377, 387 (3d Cir 2020). Indeed, the typical phrasing is, "Plaintiff is informed and believes and upon such information and belief alleges" that the defendant did whatever it's alleged to have done. 2B *American Jurisprudence Pleading and Practice Forms* § 69 (West September 2020 update); see also *Information and belief* (Wex, Cornell Law School Legal Information Institute, June 2020); for example, see *SCOMA Chiropractic, PA v Jackson Hewitt Inc*, 2017 WL 3149360, *3–4 (MD Fla). And so where properly used, it implies that the plaintiff has at least heard something—or has conducted some minimal investigation to uncover something—that she believes to be true.

What's plainly impermissible is to make a flat assertion of liability and ask that it be accepted as true. But that appears to be the type of assertion that Salermo makes here *upon information and belief* as to lack of attorney involvement in the drafting of the subject letter. To the contrary, the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. And this requires the plaintiff to show that her inferences could conceivably follow from her allegations. *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. "While legal conclusions provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 US at 679; see also *Twombly*, 550 US at 562–63.

Dismissal isn't warranted on this basis, if for no other reason than that HWA doesn't seek it. Even so, initial discovery will focus narrowly upon two topics. One is whether a lawyer at HWA did or didn't have a role in the subject debt-collection letter. The other is the basis upon which Salermo made her assertion *upon information and belief*, including what investigation her counsel undertook in this regard. A separate order regarding discovery will follow.

17

5. Conclusion

The motion to dismiss by Defendant Hughes, Watters, & Askanase, LLP is GRANTED IN PART and DENIED IN PART. Dkt 24.

The motion is GRANTED as to the *assumed-valid* claim asserted by Plaintiff Lucero Salermo under 15 USC § 1692g(a)(3) and related aspects of 15 USC § 1692e and e(10). That claim is DISMISSED WITHOUT PREJUDICE.

The motion is DENIED as to the *attorney-involvement* claim asserted under 15 USC § 1692e, e(3), and e(10). That claim will proceed.

SO ORDERED.

Signed on January 28, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge